**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDY CHAIN EASTON | : | No. 1177 MDA 2024 |

Appeal from the Order Entered August 9, 2024
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s): CP-49-CR-0000032-2023

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.:           **FILED: MAY 16, 2025**

The Commonwealth appeals from the order of the Court of Common Pleas of Northumberland County denying the Commonwealth's motion in limine requesting to present evidence that Randy Chain Easton had a prior felony conviction that disqualified him from possessing a firearm. The Commonwealth argues that the trial court erred because Easton's status as a person not to possess a firearm was necessary to negate Easton's assertion that he did not have a duty to retreat for his claim of self-defense. After careful review, we affirm.[1]

Easton's criminal charges are based on the following alleged facts. On September 25, 2022, Easton exited Laughter's bar in Sunbury, Pennsylvania and walked into an alley. He was accompanied by two people. In the alley,

---

[1] We summarily reject Easton's request to quash this appeal. **See** Easton's Brief, at 4.

Joseph Rice approached Easton. Rice was holding a machete. Rice swung the machete at Easton and grazed Easton's hand. Easton brandished a nine-millimeter handgun and fired two warning shots into the ground. Rice ran away from Easton, and Easton fired one more shot in Rice's direction. The bullet struck Rice in the back. The gunshot wound was fatal.

The Commonwealth charged Easton with Criminal Homicide (18 Pa.C.S.A. § 2501(a)), Aggravated Assault (18 Pa.C.S.A. § 2702(a)(4)), Simple Assault (18 Pa.C.S.A. § 2701(a)(2)), Possessing Instruments of Crime (18 Pa.C.S.A. § 907(b)), and Firearms not to be Carried Without a License (18 Pa.C.S.A. § 6106(a)(1)). Upon agreement between the Commonwealth and Easton, the trial court severed the charge of Firearms Not to Be Carried Without a License to avoid prejudicing Easton by introducing his criminal history.

On July 30, 2024, the Commonwealth filed a motion in limine that, in relevant part, sought to introduce evidence of Easton's criminal history to establish he was disqualified from possessing a firearm. The Commonwealth sought to introduce this evidence because a person in illegal possession of a firearm has a duty to retreat before deploying deadly force. On August 9, 2024, after holding oral argument, the trial court denied the Commonwealth's motion.[2] In its order, the trial court stated

_____

[2] In its order, the trial court also granted the Commonwealth's motion in limine permitting an expert witness testifying by electronic means. **See** Trial Court Order, 8/9/24, at 1. That ruling is not at issue on appeal.

> The Motion in Limine filed by the Commonwealth requesting to present evidence of [Easton's] prior convictions for Possession with Intent to Deliver a controlled substance for the purpose of establishing that [Easton] is disqualified from possessing a firearm is DENIED. To be admissible under Pa. R.E. 404(b)(2), the rule requires that the evidence must be relevant for a special purpose, here to show that [Easton] illegally possessed a firearm to negate use of "Stand your Ground" defense, and (2) the probative value of the evidence[] must outweigh risks of prejudice, confusion, or waste of time. In this case, the Court previously granted a Motion to Sever the Firearms Not To Be Carried Without A License charge from the information based upon a stipulation by [the] Commonwealth. In that stipulation the Commonwealth avers that "In order for the Commonwealth to prove the (firearm charge), it would have to introduce [Easton's] criminal history . . . This evidence introduced to the jury could be prejudicial to [Easton]." (Commonwealth's stipulation of February 21, 2023). The Court agrees with the Commonwealth's stipulation and finds that the [C]ommonwealth's request to present [Easton's] criminal history is outweighed by risk of prejudice to [Easton]. The Court finds that a well- crafted jury instruction can also accomplish the duty to retreat without prejudicing [Easton] by bringing out his prior convictions.

Trial Court Order, 8/9/24, at 1-2.

On August 12, 2024, the Commonwealth filed a notice of appeal pursuant to Pa.R.A.P. 311(d). The Commonwealth filed a court ordered concise statement of matters complained of on appeal, and the trial court filed an opinion explaining its decision. *See* Pa.R.A.P. 1925(a)-(b).

The Commonwealth raises one issue on appeal.

> Whether the trial court erred/abused its discretion when it denied the Commonwealth's Motion In Limine requesting evidence of [Easton's] prohibition of possession of a firearm be admitted for the purposes of Pennsylvania's Stand Your Ground Law under Pa.C.S.A. Section 505(b)(2.3)?

Commonwealth's Brief, at 9.

"The admissibility or exclusion of evidence are subject to the abuse-of-discretion standard of review." ***Commonwealth v. Nabried***, 327 A.3d 315, 321 (Pa. Super. 2024) (citation omitted). "The trial court abuses its discretion only if it misapplies the law, or its exercise of judgment is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." ***Id.*** (citation omitted).

This Court has previously summarized the purpose of pretrial motions in limine.

> The purpose of a motion *in limine* is two fold: 1) to provide the trial court with a pre-trial opportunity to weigh carefully and consider potentially prejudicial and harmful evidence; and 2) to preclude evidence from ever reaching a jury that may prove to be so prejudicial that no instruction could cure the harm to the defendant, thus reducing the possibility that prejudicial error could occur at trial which would force the trial court to either declare a mistrial in the middle of the case or grant a new trial at its conclusion. Further, a ruling on a pre-trial motion *in limine* provides counsel with a basis upon which to structure trial strategy. The motion *in limine* is an effective procedural device with no material downside risk. Once the court has pronounced its decision, the matter before it will proceed unless the Commonwealth elects to appeal an adverse ruling.

***Commonwealth v. Padilla***, 923 A.2d 1189, 1193-94 (Pa. Super. 2007) (citation omitted). Additionally, "[a]lthough a motion *in limine* is generally made before trial, the trial court may elect to rule upon the application at a later time." ***Commonwealth v. Metzer***, 634 A.2d 228, 232 n.3 (Pa. Super. 1993).

The Commonwealth argues that admitting Easton's criminal history is necessary to meet its burden of disproving Easton's claim of self-defense

because, as a person not to possess a firearm, Easton had a duty to retreat before deploying deadly force. **See** Commonwealth's Brief, at 9-11. Easton argues that the Commonwealth's attempt to admit the evidence is based on the Commonwealth's flawed presumption that he will assert a claim of self-defense based upon the premise that he had no duty to retreat. **See** Easton's Brief, at 5-6. Further, Easton points out that his status as a person not to possess would be irrelevant to his potential claim of self-defense because he could argue that although he had a duty to retreat his use of deadly force was justified because he could not retreat with "complete safety." **See id.** at 6 (citing 18 Pa.C.S.A. § 505(b)(2)(ii)).[3]

As recognized numerous times by the Pennsylvania Supreme Court,

[t]o prevail on a justification defense, there must be evidence that the defendant "(a) ... reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty

---

[3] The parties also disagree over whether the Commonwealth was precluded from seeking to admit evidence of Easton's status as a person not to possess based on the parties' agreement, accepted by the trial court, to sever the firearms not to be carried without a license charge. **See** Commonwealth's Brief, at 11; Easton's Brief, at 6-7. The trial court also stated this as a reason for its ruling. **See** Trial Court Opinion, 8/28/24, at 7-9; Trial Court Order, 8/9/24, at 1-2. We do not view this as a basis for denying the Commonwealth's motion in limine. First, at most, the Commonwealth agreed to not produce evidence that Easton was a person not to possess for the purpose of establishing that he was guilty of the other charged offenses. However, the Commonwealth never agreed to not produce that evidence to refute Easton's potential self-defense claim. Second, if Easton attempted to assert a claim of self-defense that required the Commonwealth to prove that Easton had a duty to retreat, the probative value of Easton's status as a person not to possess would greatly increase and outweigh its prejudicial impact.

which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat."

**Commonwealth v. Rivera**, 108 A.3d 779, 791 (Pa. 2014) (alteration in original) (quoting **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1124 (Pa. 2012)). "A defendant has no burden to prove a claim of self-defense. Rather, once some evidence, from whatever source, is presented to justify a finding of self-defense, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." **Id.** at 791 n.7 (citing **Sepulveda**, 55 A.3d at 1124 n. 13).

> "The Commonwealth sustains its burden [of disproving self-defense] if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger."

**Sepulveda**, 55 A.3d at 1124 (alterations in original) (quoting **Commonwealth v. Burns**, 416 A.2d 506, 507 (Pa. 1980)).

Regarding the duty to retreat, in certain circumstances before using deadly force, a person has no duty to retreat, i.e., the right to stand their ground. **See** 18 Pa.C.S.A. § 505(b)(2.3). One prerequisite to invoking the right to stand one's ground is to not be in illegal possession of a firearm. **See id.** Therefore, a person in illegal possession of a firearm has a duty to retreat before using deadly force. However, a person does not violate their duty to

retreat if they could not "avoid the necessity of using such force with complete safety by retreating[.]" 18 Pa.C.S.A. § 505(b)(2)(ii).

In filing its motion in limine the Commonwealth argues that in order to sustain its burden for negation of self-defense, it must prove Easton had the ability to safely retreat but did not do so on the date in issue. As stated above, evidence that Easton is a person "not to possess firearms" is a material element to establish that Easton had a duty to retreat prior to using deadly force, i.e., that he could not stand his ground. If Easton were not prohibited from possessing a firearm, he could have stood his ground with no duty to retreat, even if he could have safely done so, after he had been confronted with deadly force. The Commonwealth correctly argues that to negate the justification defense, it must prove that Easton had the ability to safely retreat because he had a **duty** to retreat prior to using deadly force. The Commonwealth contends that it can prove this duty through evidence that as a person classified not to possess Easton was in fact in the illegal possession of a firearm. *See* Commonwealth's Brief, at 11.

Easton counters this contention by arguing that he could rest his claim of self-defense on whether he could safely retreat and cites to 18 Pa.C.S.A. § 505(b)(2)(ii). That section states:

> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force **with complete safety** by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A. § 505 (emphasis added). In that event, the issue of his being illegally in possession of a firearm might be irrelevant depending on the evidence, or lack of evidence, presented at trial. Evidence of Easton's prior record, in light of a concession that he had a duty to safely retreat, would be, as the trial court correctly pointed out, outweighed by the risk of prejudice to Easton. Conversely, if Easton contests the duty to retreat, albeit *safely* retreat, then evidence of his prior record and his status as a person "not to possess firearms" becomes highly relevant to the point where jury instructions may not satisfy the Commonwealth's burden to prove beyond a reasonable doubt that Easton was not acting in self-defense. **See Rivera**, **supra**.

Therefore, the trial court's ruling on the motion in limine was proper at the time it was entered, but may, of course, be revisited depending on the evidence and respective positions of the parties at the time of trial. **See Commonwealth v. Green**, 273 A.3d 1080, 1085 (Pa. Super. 2022) ("Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge.") (citation omitted).

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/16/2025